# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DR. PHYLLIS L. CARR, <br><br> Plaintiff, <br><br> v. <br><br> BOSTON UNIVERSITY, <br><br> Defendant. | Civil Action No. <br><br> **COMPLAINT and** <br> **JURY DEMAND** |

## I. INTRODUCTION

1. This case is brought by Plaintiff Phyllis L. Carr, M.D. ("Dr. Carr" or "Plaintiff") against Defendant Boston University for violation of the Equal Pay Act, 29 USC § 206(d). Between 2002 and December of 2012, Dr. Carr was paid significantly less than a male employee performing substantially equal work. Dr. Carr and Dr. Robert Witzburg both worked as Associate Deans for the University's School of Medicine and performed substantially equal work that required substantially equal skill, effort, and responsibility. (In some respects, Dr. Carr's work required additional skills, effort, and responsibility when compared with Dr. Witzburg's work). However, Dr. Witzburg received a significantly higher salary.

## II. PARTIES

2. Plaintiff Phyllis L. Carr, M.D. ("Dr. Carr" or "Plaintiff"), is an adult female resident of Weston, Massachusetts. Doctor Carr worked for Defendant Boston University, in its School of Medicine ("the University" or "the School of Medicine"), from 1983 to 1989 and from May 1, 2001, until June 30, 2013. Between

May, 2001 and December 1, 2012, Dr. Carr held the position of Associate Dean of Student Affairs for the School of Medicine.

3. Defendant Boston University is a chartered and corporate private university located in Boston, Massachusetts. The University is an employer within the meaning of 29 USC § 203(d).

### III. JURISDICTION AND VENUE

4. Jurisdiction is invoked in this Court pursuant to 28 U.S.C. § 1331.

### IV. STATEMENT OF FACTS

5. Dr. Carr first worked for the University as an Assistant Professor of Medicine between 1983 and 1989. Between 1989 and 1999, she worked as an Instructor of Medicine at Harvard Medical School. Between 1999 and 2001, she worked as Assistant Professor of Medicine at Harvard Medical School.

6. In the spring of 2001, Dr. Carr and Dr. Robert Witzburg both applied for the position of Associate Dean of Student Affairs for the Defendant's School of Medicine. The University selected and hired Dr. Carr for the position on or about May 1, 2001. Dr. Carr also became an Associate Professor of Medicine at the University at that time.

7. In or about 2002, the Associate Dean of Admissions for the School of Medicine stepped down. Dr. Witzburg applied for and was hired into this position. Dr. Carr sat on the selection committee that recommended Dr. Witzburg for the position.

8. Between 2002 and 2012, studies conducted by the University and by entities outside of the University established that the University often paid female professors and administrators less than their respective male counterparts.

9. In or about 2004, Dr. Carr learned that the University was paying her significantly less money than it was paying Dr. Witzburg, despite the fact that both she and Dr. Witzburg worked as Associate Deans, specialized in the same field of medicine – internal medicine – and had been in practice for the same number of years since graduating from medical school. Specifically, the University in 2004 was paying Dr. Carr approximately $160,000 and, Dr. Carr discovered, had hired Dr. Witzburg in 2002 at a salary of approximately $240,000 per year. In consideration of likely annual raises averaging three per cent (3%), on information and belief the University was paying Dr. Witzburg between $247,200 and $254,600 in 2004.

10. Dr. Carr brought this pay discrepancy to the attention of Dr. John McCahan, then Acting Dean of the School of Medicine; in response, Dr. McCahan told Dr. Carr that her salary would be raised by $20,000, which subsequently occurred, but that Dr. Carr would have to speak with the incoming permanent Dean about any further pay raise.

11. In or about 2005, the University hired Dr. Karen Antman as Dean of the School of Medicine. Dr. Carr spoke with Dr. Antman about the continuing discrepancy between her salary and the salary of her male peer, Dr. Witzburg. Dr. Antman replied that she would not raise Dr. Carr's salary any higher and further stated that Dr. Carr was being paid her "market value."

12. In or around 2008, Dr. Carr attained the rank of Full Professor. Dr. Witzburg also held the rank of Full Professor.

13. In their respective positions as Associate Deans, Dr. Carr and Dr. Witzburg inhabited the same position in the hierarchy of the School of Medicine. Each had five Assistant Deans who reported to them, respectively. Both Dr. Carr and Dr. Witzburg reported to the Dean of the Medical School.

14. As Associate Deans, both Dr. Carr and Dr. Witzburg were responsible for:

    a. Attending all Dean's Committee meetings, along with all other assistant and associate deans;

    b. Attending all Executive Committee meetings, along with all Department Chairs, Deans, and Center Directors;

    c. Attending all Faculty Committee Meetings;

    d. Attending all Associate Deans meetings;

    e. Attending various school functions – including the White Coat Ceremony, graduation, Match Day, Senior Banquet, and Senior Awards Day.

15. Both Dr. Carr and Dr. Witzburg spent the majority of their time performing their respective duties and responsibilities as Associate Deans; in addition, both saw patients regularly in the Department of Medicine at the University.

16. Dr. Carr also conducted original research under several grants from the Kellogg Foundation, the Josiah Macy, Jr. Foundation, and a grant awarded by the National Institutes of Health. Dr. Witzburg engaged in no original research.

17. Both Dr. Carr and Dr. Witzburg spent a significant amount of time meeting with students in a manner requiring substantially equal skill, effort, and responsibility. Dr. Carr was required to meet with any student having either academic or personal difficulties, host dinners at her home with the students she advised, and serve as the Director of the Academies of Advisors. Dr. Witzburg was required to interview applicants to the University who were selected for interviews, meet with accepted applicants, and host dinners at his home for students that he advised.

4

18. Dr. Carr was responsible for administrative duties requiring, at the least, substantially equal skill, effort, and responsibility to that required by Dr. Witzburg's administrative duties. Dr. Carr was required to draft and issue Dean's Letters for graduating seniors and to review Dean's Letters drafted by Assistant Deans. She also Drafted Dean's Letters of Recommendation, attended meetings of the Student Evaluation and Promotion Committee, attended Preclinical Committee meetings and Clinical Committee meetings, chaired the Scholarship Committee, and oversaw the student residence. Dr. Witzburg was required to review the applications of prospective students and oversee the selection of successful applicants.

19. Despite the fact that Dr. Carr and Dr. Witzburg performed substantially equal work at the least, which, at the least, required substantially equal skill, effort, and responsibility, the University paid Dr. Carr significantly less money than it paid Dr. Witzburg between 2002 and December of 2012. During the time period relevant to this claim, the University paid Dr. Carr a maximum of $224,000 per year in 2012, while the University paid Dr. Witzburg compensation well in excess of $270,000, and likely well over $275,000. .

20. Effective December 1, 2012, Dean Antman removed Dr. Carr from her position as Associate Dean and demoted Dr. Carr to the position of Assistant Dean. Dean Antman terminated Dr. Carr's employment in the Dean's office altogether, effective June 30, 2013.

## COUNT I

### (Equal Pay Act, 29 USC § 206(d))

21. Plaintiff re-alleges paragraphs 2 through 20.

22. During the years of her employment with Boston University between 2002 and December 31, 2012, Dr. Carr performed work substantially equal, at the least, to the work performed by Dr. Witzburg.

23. During the years of her employment with Boston University between 2002 and December 31, 2012, the University paid Dr. Carr significantly less compensation than Dr. Witzburg. Between 2009 and 2012, the University paid Dr. Carr a maximum of $224,000 per year, and paid Dr. Witzburg a salary well in excess of $270,000.

24. By compensating Dr. Carr at a rate less than was paid to Dr. Witzburg, a male employee, for the performance of substantially equal work at the least, the University violated 29 USC § 206(d).

25. Because the University was aware that Dr. Carr was being paid at a rate lower lower than was paid to Dr. Witzburg for the performance of, at the least, substantially equal work, and did not rectify this pay discrepancy, the University's violation of the law was willful.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter the following relief:

1. Damages in the form of back pay in such amount as the Court shall find Plaintiff has been unlawfully underpaid for a period of three years prior to the filing of this complaint;

2. Liquidated damages in an amount equal to Plaintiff's actual damages;

3. Reasonable attorney fees and costs pursuant to 29 USC 216(b).

## JURY DEMAND

The Plaintiff demands a jury trial on all claims and issues triable to a jury.

Respectfully submitted,

DR. PHYLLIS L. CARR,

By her attorneys,

*Betsy Ehrenberg* (signature)
Betsy Ehrenberg, #554628
Ian O. Russell, #673387
Pyle Rome Ehrenberg PC
18 Tremont St., Ste. 500
Boston, MA 02108
(617) 367-7200

Dated: December 12, 2013